UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

David Earl Wattleton,                                    Civ. No. 18-793 (ECT/BRT)

      Plaintiff,

v.                                                       **REPORT AND RECOMMENDATION**

John Doe or Jane Doe,
Trust Fund Administrator,
Federal Medical Center Rochester,

      Defendant.

---

David Earl Wattleton, Reg. No. 50260-019, FMC Rochester, PMB 4000, Rochester, MN 55903, *pro se* Plaintiff.

Andrew Tweeten, Esq., Assistant United States Attorney, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

    In this action, *pro se* Plaintiff David Earl Wattleton alleges that he does not meet the definition of "prisoner" under the Prison Litigation Reform Act ("PLRA") because he is involuntarily committed due to mental health issues, and as a result, he is not subject to the PLRA's mandatory filing fee payment requirement. *See* 28 U.S.C. §§ 1915(b), (h); (Doc. No. 4, Am. Compl.) Plaintiff asks the Court to issue an order eliminating his indebtedness for filing fees, enjoining prison officials from collecting fees from his account, and returning monies already paid to the federal courts under the PLRA. (*Id.* at 2.) Defendant filed a motion to dismiss. (Doc. No. 15.) Plaintiff filed a motion in opposition to Defendant's motion to dismiss, which the Court considered as a brief in

opposition. (Doc. No. 24.)¹ For the reasons stated below, this Court recommends that Defendant's motion be granted.

## I. Background

On June 22, 1999, Plaintiff was indicted in the United States District Court for the Northern District of Georgia for four counts of making a bomb threat, in violation of 18 U.S.C. § 844(e). (*See* Doc. No. 19, Declaration of Andrew Tweeten ("Tweeten Decl."), Ex. 1 at 1–2.) On November 5, 1999, Plaintiff was committed to the custody of the Attorney General for an examination to determine if he was competent to proceed in the criminal case. *See* 18 U.S.C. § 4241(b); (Tweeten Decl., Ex. 1 at 4). On December 2, 1999, Plaintiff was committed for an evaluation to determine the existence of insanity at the time of the offense. *See* 18 U.S.C. § 4242(a); (Tweeten Decl., Ex. 1 at 5.) On June 8, 2000, a jury found Plaintiff not guilty by reason of insanity. *See* 18 U.S.C. § 4242(b)(3); (Tweeten Decl., Ex. 1 at 7.) After an evaluation to determine his dangerousness, Plaintiff was committed to the custody of the Attorney General on August 9, 2000. *See* 18 U.S.C. § 4243(b); (Tweeten Decl., Ex. 1 at 9, Ex. 2).

Plaintiff is a frequent litigator in federal court, having filed approximately 152 district court and appellate court cases. (Tweeten Decl., Ex. 3.) During Plaintiff's incarceration with the Bureau of Prisons, he has made numerous PLRA payments

---

¹ Plaintiff also requested leave to file a sur-reply brief. (Doc. No. 29.) This Court granted Plaintiff's motion and considered Plaintiff's sur-reply. (Doc. No. 30.)

towards court filing fees. (Doc. No. 19, Declaration of Tanya Hodge ("Hodge Decl.") ¶ 5, Ex. B.)

Enacted in 1996, the PLRA requires prisoners to pay all filing fees for new civil actions and appeals in installments. *See* 28 U.S.C. § 1915(b).[2] Prior to the PLRA,

---

[2] The payment provisions provide as follows:

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
> (A) the average monthly deposits to the prisoner's account; or
>
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
>
> (3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.
>
> (4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

28 U.S.C. § 1915(b).

"indigent prisoners, like other indigent persons, could file a civil action without paying any filing fee." *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016).

The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). Courts have generally held that individuals who are civilly committed are not "prisoners" under § 1915(h) and the identical definition of prisoner set forth in 42 U.S.C. § 1997e(h). *See Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003) (interpreting 42 U.S.C. § 1997e(h)); *see also Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) ("We agree with . . . opinions that have held the PLRA's straightforward definition of 'prisoner' to apply only to persons incarcerated as punishment for a criminal conviction."); *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) ("Therefore, we hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e and 28 U.S.C. § 1915.").

As outlined in Program Statement 4500.12, Trust Fund/Deposit Manual, all inmates are assigned an individual commissary account in which they maintain their money during incarceration. (Hodge Decl. ¶ 3, Ex. A.) BOP staff have limited authority to withdraw funds from an inmate's account without their permission, including the authority to withdraw funds for "court-ordered PLRA filing fees." (Hodge Decl. 3, Ex. A

4

at 87.) Program Statement 4500.12 contains specific information for processing PLRA orders:

> In accordance with the PLRA, 42 U.S.C. § 1997e, inmates may be assessed certain fees for filing lawsuits. The source document for these withdrawals is the court order. No inmate signature is required to process these withdrawal types. PLRA documents are scanned into TRUFACS.
>
> PLRA withdrawals are processed using the Misc Inmate Debt Maintenance Screen in TRUFACS. These withdrawals do not allow creation of a negative account balance. The source document is attached to the TRUFACS Outside Payment Report and the Sub-Certification Report received for the inmate funds withdrawn and scheduled for U.S. Treasury check payment.

(Hodge Decl. ¶ 3, Ex. A at 91.) As money is deposited into an inmate's trust fund account, TRUFACS will automatically encumber 20% of the deposit for a PLRA filing fee order. (Hodge Decl. ¶ 4.) The encumbrances will be released and payment sent on the first day of the next month, so long as the inmate's trust fund account balance exceeds $10. (*See id.*)

When Trust Fund Supervisor Tanya Hodge[3] was served in this litigation, there were two active PLRA debts associated with Plaintiff's trust fund account: Debt Reference No. MRCHD010 and Debt Reference No. MRCHD007. (Hodge Decl. ¶ 6.) Debt Reference No. MRCHD010 is associated with an April 15, 2013 court order in *In re: Wattleton*, No. 13-1326 (4th Cir.), directing the collection of a $455 filing fee pursuant to 28 U.S.C. § 1915. (Hodge Decl. ¶ 7, Ex. C.) Debt Reference No.

---

[3]   Hodge is the correct Defendant in this matter, and this Court recommends that she be substituted for Jane or John Doe in the case caption.

MRCHD007 is associated with a February 10, 2009 court order in *Wattleton v. Paul*, No. 09-1085 (1st Cir.), directing collection of a $455 filing fee pursuant to 28 U.S.C. § 1915. (Hodge Decl. ¶ 11, Ex. F.) Over the years, deposits to Plaintiff's trust fund account have been encumbered for Debt Reference Nos. MRCHD010 and MRCHD007, but later released with no PLRA payment made to the court. (Hodge Decl. ¶¶ 8, 12, Exs. D, G.) When his account balance exceeded $10, PLRA payments were forwarded to the court. (*Id.*)

Plaintiff's last PLRA payment towards Debt Reference No. MRCHD010 was made on May 1, 2018, which brought his outstanding balance on the filing fee down to $381.41. (Hodge Decl. ¶ 8, Ex. D.) On May 14, 2018, the court rescinded its April 25, 2013 Order and directed the return of all payments Plaintiff had made towards his filing fees. (Hodge Decl. ¶ 9, Ex. E.)[4] Prior to this litigation, FMC Rochester had not received a copy of the May 14, 2018 Order. (Hodge Decl. ¶ 10.) In light of the order, Debt Reference No. MRCHD010 has been marked "inactive," and the BOP stopped collecting the debt. (*Id.*) Plaintiff's last PLRA payment on Debt Reference No. MRCHD007 was made on June 1, 2018, which brought his outstanding balance on the filing fee down to $154.68. (Hodge Decl. ¶ 12, Ex. G.) There is no court order directing the Bureau to stop

---

[4] The Fourth Circuit wrote: "It appearing that the petitioner in this case is under a civil, rather than criminal, commitment order, and it further appearing to the court that persons under a civil commitment order are not required to pay the filing fees for their cases in installments under the Prison Litigation Reform Act, IT IS ORDERED that this court's April 15, 2013, order directing the payment of the filing fee in installments is hereby RESCINDED. No further amounts shall be withheld or paid under that order." (Hodge Decl. ¶ 9, Ex. E at 2.)

collecting this fee. (Hodge Decl. ¶ 13, Ex. H.) Debt Reference No. MRCHD007 is marked "active" and the BOP continues to collect PLRA payments for this debt. (Hodge Decl. ¶ 14.)

## II.     Analysis

Plaintiff claims that Defendant has wrongfully collected PLRA filing fees from his trust fund account. To the extent Plaintiff is seeking money damages against Defendant in her official capacity, Defendant argues that Plaintiff's complaint must be dismissed on the basis of sovereign immunity. (Doc. No. 18, Def.'s Mem. 7–9.) Defendant also argues that the collection of PLRA fees from Plaintiff's account does not violate due process, and even if it did, Defendant is entitled to qualified immunity on any personal capacity claim. (*Id.* at 9–15.)

### A.     Standard of review

Defendant moves to dismiss under Rule 12 of the Federal Rules of Civil Procedure. Defendant's sovereign immunity argument is a jurisdictional, threshold matter that should be addressed under Rule 12(b)(1). *See Sundquist v. Nebraska*, 122 F. Supp. 3d 876, 880 (D. Neb. 2015) (citing *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014)). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack, the court "restricts itself to the face of the pleadings" and "the non-moving party receives the same

protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).[5]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Id.* The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Finally, while "pro se complaints are to be construed liberally," the Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

---

[5] A factual attack, by contrast, "challenges the existence of subject-matter jurisdiction," and when "ruling on a factual attack, the court considers matters outside the pleadings, and the nonmoving party proceeds without 'the benefit of 12(b)(6) safeguards.'" *Smith v. Bradley Pizza Inc.*, 314 F. Supp. 3d 1017, 1022 (D. Minn. 2018) (quoting *Osborn*, 918 F.2d at 729 n.6). Defendant's motion is not a factual attack on subject-matter jurisdiction.

### B. Sovereign Immunity

Plaintiff's complaint is silent as to whether he is suing Defendant Hodge in her individual or official capacity. Courts construe such silence in a complaint as the complaint stating official-capacity claims only. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("In actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability."); *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). A suit against a public official in his or her official capacity "is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Adsamit*, 460 F.3d 979, 986 (8th Cir. 2006). Defendant is an officer of the federal government, and the United States has not waived its sovereign immunity for *Bivens*[6] actions against federal employees. *See Hartje v. F.T.C.*, 106 F.3d 1406, 1408 (8th Cir. 1997) ("A *Bivens* action, which provides a cause of action for a constitutional violation, is only available against federal officers, not government entities."); *Richter v. U.S. Soc. Sec. Admin.*, No. 8:17CV155, 2018 WL 1385909, at *2 (D. Neb. Feb. 26, 2018) (explaining that *Bivens* "recognized an implied private action for money damages against federal officers alleged to have violated a citizen's constitutional rights").

---

[6]     *See Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

For these reasons, Plaintiff cannot pursue a claim for money damages against Defendant in her official capacity, and this aspect of Plaintiff's complaint should be dismissed.

### C.   Claim for Injunctive Relief: Procedural Due Process

Defendant, as noted above, is still collecting one of Plaintiff's PLRA debts from Plaintiff's trust account. Plaintiff's claim for an injunction to stop Defendant from collecting that debt is not barred by sovereign immunity. *See Raz v. Lee*, 343 F.3d 936, 938 (8th Cir. 2003); *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1230–33 (10th Cir. 2005). Such a claim, however, fails to state a claim upon which relief can be granted.

Plaintiff's claim should be construed as a procedural due process claim because he does have a property interest in the money in his trust account. *See Murray v. Dosal*, 150 F.3d 814, 817 (8th Cir. 1998). The Fifth Amendment applies to federal prisoners and provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V; *see Elliott v. Wilson*, Case No. 0:15-cv-01908, 2017 WL 1185213, at *16 (D. Minn. Jan. 17, 2017) (applying Fifth Amendment to procedural due process claim of federal prisoner); *Amawi v. Walton*, Case No. 3:13-cv-00866-JPG-RJD, 2016 WL 7364768, at *5 (S.D. Ill. Nov. 17, 2016) (same). When presented with a procedural due process issue, courts consider (1) whether there exists a liberty or property interest which has been interfered with by the State, and (2) whether the procedures attendant upon that deprivation were constitutionally sufficient. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "The requirements of

due process are not rigid; rather, they 'call for such procedural protections as the particular situation demands.'" *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)).

To determine whether the process afforded is sufficient, courts must balance the private interest that will be affected by the official action, the Government's interest, and "'the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (cleaned up). Intentional or negligent deprivation of property without a prior hearing does not violate due process if a meaningful post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Willis Smith & Co., Inc. v. Arkansas*, 548 F.3d 638, 640 (8th Cir. 2008).

In *Murray*, the Eighth Circuit recognized that prisoners are entitled to due process before they can be deprived of the funds in their prison account. 150 F.3d at 818–19. "The question is what process is due before money in a prisoner's account can be applied to a filing fee." *Id.* at 819. The court reasoned that incarceration "does not deprive prisoners of the protection of the federal Constitution," but it "does result in restrictions and limitations being placed on the prisoner's constitutional rights." *Id.* (citing *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996)). The private interests of prisoners do not favor additional procedures in this context because prisoners make an affirmative choice to file a lawsuit in federal court. *See id.* ("'[t]he funds are being utilized for the prisoner's benefit just as a non-indigent's money is used by him to proceed in federal court.

11

Furthermore, the Act charges a prisoner no more than anyone else who is adjudged able to pay-and under much more generous payment terms.'") (quoting *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997)).

The court also found that there was "very little risk of an erroneous deprivation" because it is "the court and not the prison officials that assess the filing fee," and "[t]he prison officials, or other agency having custody of the prisoner, merely perform the administrative function of deducting the fee from the prisoners' accounts and forwarding that fee to the clerk of court." *Id.* Finally, the court emphasized the "government's interest in the fee system, to reduce frivolous prisoner filings by requiring the prisoner to weigh, as other litigants must, the economic cost of filing suit." *Id.* The court therefore held that the PLRA collection scheme does not violate a prisoner's right to procedural due process. *Id.*

Thus, under the Eighth Circuit's decision in *Murray*, the ongoing collection of fees from Plaintiff's trust account does not violate due process. This is true even though Plaintiff is likely correct that he is not a "prisoner" under the PLRA. *See* 28 U.S.C. § 1915(h); *Perkins*, 340 F.3d at 583 (finding that a person who is civilly-committed does not satisfy the definition of "prisoner" set forth in 42 U.S.C. § 1997e(h), which is identical to the definition in 28 U.S.C. § 1915(h)). The BOP did not determine that Plaintiff should pay the PLRA filing fees in these cases. That determination was made by the courts that collect the fees for individual case filings. The BOP is simply complying with the orders by collecting the fees pursuant to the provisions of the PLRA.

Indeed, the possibility that there is an ongoing, erroneous deprivation in this case does not mean that there is a due process violation. When an inmate such as Plaintiff files a lawsuit or appeal and requests leave to proceed *in forma pauperis*, that inmate can argue that he is not a prisoner under the PLRA. Therefore, Plaintiff had an adequate pre-deprivation remedy with regard to his PLRA fees. Plaintiff also has the option to return to the court charging the fee and request that the fee order be reversed or vacated. *See King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018). Plaintiff successfully availed himself of this remedy in asking the Fourth Circuit to rescind its PLRA order, eliminating one of the active debts within the purview of Defendant Hodge and the BOP. Therefore, Plaintiff has adequate pre- and post-deprivation remedies with respect to the collection of fees under the PLRA, and there is no procedural due process violation.

### D.   Qualified Immunity

If the Amended Complaint could be construed as raising an individual capacity claim, Defendant Hodge would be entitled to qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity, the court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011).

As noted above, the facts alleged do not establish a violation of Plaintiff's procedural due process rights. Moreover, it was not unreasonable for Defendant Hodge to consider her actions lawful when she was facilitating the collection of fees as directed by facially valid court orders. Defendant Hodge is therefore entitled to qualified immunity.

### III.  Recommendation

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Tanya Hodge be substituted as the Defendant in this action;

2. Defendant's Motion to Dismiss (Doc. No. 15) be **GRANTED**;

3. Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss (Doc. No. 24) be **DENIED**; and

4. Judgment be entered accordingly.

Dated: December 3, 2018.            *s/ Becky R. Thorson*
                                    BECKY R. THORSON
                                    United States Magistrate Judge

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).