UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

David Earl Wattleton,　　　　　　　　　　　File No. 18-cv-00793 (ECT/BRT)

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　**ORDER ACCEPTING REPORT
　　　　　　　　　　　　　　　　　　　　　AND RECOMMENDATION**

Tanya Hodge,[1] Trust Fund Administrator,
Federal Medical Center Rochester,

　　　　　Defendant.

---

This matter is before the Court on objections [ECF No. 32-2] made by Plaintiff David Earl Wattleton to the December 3, 2018 Report and Recommendation ("R&R") [ECF No. 31] issued by Magistrate Judge Becky R. Thorson. Wattleton has also since brought two motions to amend his complaint. ECF Nos. 41, 45. Defendant responded to the objections and filed briefs in opposition to each of the motions to amend. ECF Nos. 40, 42, 46. A de novo review of the record pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3) will be conducted and the motions to amend will be considered.

The factual background of this case is set forth clearly in the R&R. R&R at 1–6. Briefly, Wattleton commenced this action pro se requesting the Court to "order the Federal Medical Center Rochester ["FMC-Rochester"] Business Office officials to cease taking

---

[1]　　　Wattleton does not identify the Defendant by name, only by title: John or Jane Doe, Trust Fund Administrator at the Federal Medical Center in Rochester. Compl. at 1 [ECF No. 1], *see* Am. Compl. at 1 [ECF No. 4]. Because Tanya Hodge holds the position of Trust Fund Administrator, she is substituted as the proper named Defendant in this matter. *See* R&R at 5 n.3 [ECF No. 31].

monies out of his account and refund any monies collected." App. at 1 [ECF No. 8]. Wattleton is involuntarily committed pursuant to 18 U.S.C. § 4243(e). Tweeten Decl. Ex. 2 [ECF No. 19-2]. By virtue of his involuntary commitment, Wattleton should be exempt from the prisoner filing fees set forth in 28 U.S.C. § 1915(b) of the Prison Litigation Reform Act ("PLRA"). *See* Am. Compl. at 1 [ECF No. 4]; *see also Pendleton v. Sanders*, 565 F. App'x 584, 584 (8th Cir. 2014) (per curiam) ("[A] civilly committed plaintiff does not qualify as a 'prisoner' under the PLRA." (citing *Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003) (per curiam))). Nevertheless, the Bureau of Prisons was ordered by two courts in two actions to withdraw funds from Wattleton's account, purportedly in accordance with the PLRA. Hodge Decl. ¶¶ 6–7, 11 [ECF No. 20]; *id*. Exs. C, F [ECF Nos. 20-3, 20-6]. Wattleton initiated this action on March 22, 2018, bringing a constitutional claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and seeking injunctive relief. Compl. at 1 [ECF No. 1]. He then filed an amended complaint on April 23, 2018, requesting the Court to remove the encumbrances and enjoin FMC-Rochester from taking funds from his account for filing fees. Am. Compl. at 2.

In the R&R, Magistrate Judge Thorson recommended dismissing Wattleton's action in its entirety. She found that Defendant is entitled to sovereign, or alternatively qualified, immunity and recommended dismissal of the *Bivens* claim as a result. R&R at 9–10, 13–14. Magistrate Judge Thorson construed Wattleton's request for an injunction as a procedural-due-process claim and recommended its dismissal because Wattleton has access to adequate pre- and post-deprivation remedies such that the collection of fees from

2

his account did not constitute a due-process violation. R&R at 10–13. Wattleton raised four objections to these recommendations. *See* Objs. In response, Defendant argued that Wattleton's objections "are meritless and should be overruled." Resp. at 1 [ECF No. 40].

Wattleton objects to the conclusion in the R&R that his *Bivens* claim must fail because he did not expressly plead that he was bringing the claim against Defendant in her personal capacity. Objs. at 1; *see* R&R at 9–10. In both his original and amended complaints, Wattleton is silent as to whether he is suing Defendant in her official or personal capacity. *See* Compl.; Am. Compl. In his objections, he argues that because a *Bivens* claim can only involve the personal liability of a government employee, his complaint should be construed as suing Defendant in her personal capacity. Objs. at 1 (citing *Hill v. Holinka*, No. 06-cv-4720 (PJS/JJG), 2008 WL 549928, at *1–3 (D. Minn. Feb. 27, 2008)).

When a plaintiff fails to state whether the suit brings charges against officials in their individual or official capacities, "the suit is construed as being against the defendants in their official capacit[ies]" only. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). "This rule is derived from Eighth Circuit cases regarding the sovereign immunity of states under the Eleventh Amendment." *Hill*, 2008 WL 549928, at *1 (citing *Larson v. Kempker*, 414 F.3d 936, 939–40 (8th Cir. 2005); *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)); *see also Johnson*, 172 F.3d at 535 (involving a 42 U.S.C. § 1983 claim against state officials); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) (involving a 42 U.S.C. § 1983 claim against the state of Arkansas, state police department, and a state official); *Artis v. Francis Howell N. Band*

3

*Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (involving a 42 U.S.C. § 1983 claim against a state official). In cases regarding the sovereign immunity of states under the Eleventh Amendment, state officials may be sued in their official or individual capacity, or both, such that this rule is necessary to give proper notice to the defendants. *See Johnson*, 172 F.3d at 535. However, in cases involving *Bivens* claims—civil actions alleging violations of the Federal Constitution by officials of the federal government in their individual capacity only—courts in this District have construed suits that are silent to be against defendants in their individual capacities. *See, e.g.*, *Meyer v. Haeg*, No. 15-cv-2564 (SRN/HB), 2016 WL 11491390, at *17 (D. Minn. June 27, 2016) (construing a pro se filing as a motion to amend a complaint to bring "a *Bivens* claim against the . . . official in his or her personal capacity"), *R&R adopted*, 2016 WL 4153611 (D. Minn. Aug. 5, 2016), *order amended on other grounds and superseded*, 2016 WL 8671831 (D. Minn. Dec. 9, 2016); *Carlson v. U.S. Dep't of Educ.*, No. 12-cv-645 (JNE/JJK), 2012 WL 4475300, at *9 (D. Minn. Aug. 9, 2012), *R&R adopted*, 2012 WL 4328936 (D. Minn. Sept. 20, 2012) ("[A] *Bivens* claim does not involve any official-capacity recovery. . . . Thus, 'it makes no sense to require a plaintiff to specify whether a *Bivens* claim is proceeding against a government employee in an official or individual capacity.'" (quoting *Hill*, 2008 WL 549928 at *2)); *Cooke v. Stanton*, No. 08-cv-1175 (MJD/JJK), 2009 WL 424537, at *4 & n.3 (D. Minn. Feb. 18, 2009); *Hill v. Anderson*, No. 06-cv-4497 (PJS/JJG), 2008 WL 319898, at *2–3 (D. Minn. Feb. 5, 2008). This intra-District trend, coupled with the rule that courts should liberally construe pro se filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), makes it

appropriate to interpret Wattleton's *Bivens* claim as against Defendant in her individual capacity.

Wattleton also argues that Defendant is not entitled to qualified immunity with respect to the *Bivens* claim because her "actions or inactions were influenced by a discriminatory motive." Objs. at 2. "Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mountain Pure, LLC v. Roberts*, 814 F.3d 928, 932 (8th Cir. 2016) (citation omitted). The second prong requires a showing that the "right was clearly established at the time of the deprivation . . . [such] that a reasonable official would understand that what [she] is doing violates that right." *Id*. (first two alterations in original) (citation omitted). In conducting the qualified immunity analysis, a court has discretion to decide which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Based on the second prong alone, Magistrate Judge Thorson correctly states that "it was not unreasonable for Defendant Hodge to consider her actions lawful when she was facilitating the collection of fees as directed by facially valid court orders." R&R at 14. Hodge herself did not determine that Wattleton should pay according to the PLRA in the two actions at issue nor would she have the authority to make such a determination; instead, the source documents for these withdrawals were facially valid court orders. Hodge Decl. Ex. A at 87, 91 [ECF No. 20-1]; R&R at 12 ("The [Bureau of Prisons] is simply complying with the orders [of the courts] by collecting the fees pursuant to the provisions of the PLRA.").

5

Wattleton's objection also fails because he did not "plead sufficient factual matter" to show that the conduct at issue was based on a discriminatory motive. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In fact, Wattleton did not plead any facts alluding to discrimination, *see* Compl. and Am. Compl., and he cannot assert that argument for the first time at this stage of the litigation, *see Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) (collecting cases). As a result, Magistrate Judge Thorson's recommendation that Defendant is entitled to qualified immunity with respect to the *Bivens* claim is accepted. *See* R&R at 13–14.

Wattleton further objects to the conclusion in the R&R that his due-process claim fails to state a claim upon which relief can be granted. Objs. at 2. He argues that the post-deprivation remedy here is inadequate because it would require him to file numerous suits, separately in each court to which he is wrongfully indebted, requesting that the fee encumbrances be vacated. *Id*. (citing *Lathon v. City of St. Louis*, 242 F.3d 841, 844 (8th Cir. 2001) (requiring a plaintiff to file four separate suits did not constitute an adequate remedy)). After de novo review, this Court has determined that Magistrate Judge Thorson's analysis of and conclusions regarding the due-process claim are correct, *see* R&R at 10–13, and the case cited by Wattleton is distinguishable in numerous material respects.

In *Lathon*, the police department seized Mr. Lathon's property pursuant to a search warrant. 242 F.3d at 842. No criminal charges were ever filed against Mr. Lathon in connection with the seized property, but that property was nevertheless distributed to sheriffs' offices in three different counties. *Id*. Mr. Lathon requested the return of his

property, but the city refused and later argued that adequate post-deprivation remedies existed, namely, the ability to bring a replevin action in each county where Mr. Lathon sought return of property. *Id.* at 842–44. The Eighth Circuit concluded that "[t]he authorized decision not to return Mr. Lathon's property is not the sort of action for which postdeprivation process will suffice" and went on to opine that even if it was, the available remedy was not adequate. *Id.* at 844.

Wattleton's circumstances are materially different. He has access to a pre-deprivation remedy. A litigant may file an *in forma pauperis* application with the court, often at the initiation of the lawsuit, in which the litigant can indicate that he is civilly committed and therefore not subject to PLRA filing fees to prevent his account from ever being encumbered in the first place. *See* U.S. COURTS, Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form), Form No. AO 240 (revised 07/10), https://www.uscourts.gov/forms/fee-waiver-application-forms/application-proceed-district-court-without-prepaying-fees-or-0. Instead of filing that application, or the earlier version of it, Wattleton signed consent forms for fees to be collected from his account in both cases. Hodge Decl. Ex. C at 4 [ECF No. 20-3]; *id.* Ex. F at 6 [ECF No. 20-6]. Moreover, Wattleton's property is not being distributed across different counties through processes beyond his control. Wattleton initiated the lawsuits in each of the two courts that have indebted his account. *See* Hodge Decl. Ex. H [ECF No. 20-8]; *In re Wattleton*, 536 F. App'x 375, 376 (4th Cir. 2013) (identifying Wattleton as the petitioning party).

Wattleton's post-deprivation remedy is not inadequate either. If, after choosing not to indicate at the outset that prisoner filing fees do not apply to him, signing a consent form

for the withdrawal of funds from his account, and engaging in litigation in the forum, Wattleton later decides to request a court to stop collecting fees, it is not overly cumbersome for him to return to the same court and request rescission of the PLRA order. He successfully availed himself of that very post-deprivation remedy in one instance—one court already ordered that collection be stopped and previously debited funds be refunded. Hodge Decl. Ex. E [ECF No. 20-5]; R&R at 13. Magistrate Judge Thorson's conclusion that no procedural-due-process violation occurred is correct. *See* R&R at 10–13.

Wattleton brought two motions to file a second amended complaint. *See* Feb. 26, 2019 Mot. to Amend [ECF No. 41]; Mar. 18, 2019 Mot. to Amend [ECF No. 45]. The February 26 Motion itself appears to be a second amended complaint. *See* Feb. 26, 2019 Mot. to Amend (stating Wattleton "hereby files this amended complaint"). The entire pleading is one page of allegations with the signature block appearing on a second page. *See id*. It alleges completely new and different facts—namely, that the "profits from the sale of commissary items do not benefit the inmate population 'as a whole.'" *Id*. at 1. It also fails to identify a defendant beyond "John or Jane Doe, et al.," which is only listed in the case caption, or to identify specific claims beyond seeking injunctive relief. *Id*. The March 18 motion appears to be a revised, three-page version of that same second amended complaint. *See* Mar. 18, 2019 Mot. to Amend. It provides a more detailed recitation of the underlying facts and identifies the Doe Defendant as the Trust Fund Administrator. *Id*. at 1–3.

At this stage in the litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court

8

should freely give leave when justice so requires," *id.*, "[h]owever, there is no absolute right to amend," *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 521 (D. Minn. 2018) (quoting *Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir. 2005)).  "A district court may refuse to grant leave to amend pleadings for 'undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.'" *IBEW Local 98 Pension Fund*, 326 F.R.D. at 521 (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)).  Leave to file a supplemental pleading may be granted "'[o]n motion and reasonable notice,' and 'on just terms' according to the Court's discretion."  *Dalton v. Simonson Station Stores, Inc.*, No. 17-cv-04427 (SRN/LIB), 2018 WL 2338807, at *2 (D. Minn. May 23, 2018) (alteration in original) (quoting Fed. R. Civ. P. 15(d)).  "Supplemental pleadings are intended to cover matters occurring after the original complaint is filed . . . ." *Natco Pharma Ltd. v. Gilead Scis., Inc.*, No. 14-cv-3247 (DWF/JSM), 2015 WL 5718398, at *7 (D. Minn. Sept. 29, 2015) (citing *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 673 n.4 (8th Cir. 2003)).  Most courts addressing a motion to supplement the complaint apply the same standard as addressing a motion to amend the complaint.  *Superior Indus., LLC v. Masaba, Inc.*, No. 10-cv-00764 (DWF/LIB), 2011 WL 13136007, at *2 (D. Minn. Dec. 9, 2011).

It is likely that Wattleton intends this second amended complaint to supplement, rather than amend and supersede, the allegations in his first amended complaint.  Even though the titles of the motions indicate they are motions to amend and cite Rule 15 and Local Rule 15, Wattleton identifies the purpose of the motions as to "bolster allegations in the pleadings," not replace them.  Mar. 18, 2019 Mot. to Amend at 1.  Wattleton filed a

9

total of eight pleadings, motions, and briefs in connection with the facts and claims alleged in his first amended complaint, and he probably does not mean to abandon those now. *See* ECF Nos. 1, 2, 4, 8, 24, 27, 29, 32. Additionally, he apparently understood his first amended complaint to have a supplemental relationship to his original complaint. *See* Sur-Reply to Mot. to Dismiss at 1 [ECF No. 29] ("[T]he plaintiff reminds the court that he is proceeding pro se and 'construed liberally,' the court should assume that plaintiff meant the amended complaint to supplement the original complaint." (citing *Ford v. Donovan*, 891 F. Supp. 2d 60, 62 (D.D.C. 2012) ("Instead of superseding his original Complaint, as a typical Amended Complaint does, this later pleading supplements it. Given his *pro se* status, the Court will treat the combined pleadings as one joint Complaint."))). The Court will look to Wattleton's more detailed March 18 motion in addressing both the February 26 and March 18 motions to amend.

Wattleton's second amended complaint outlines new allegations unrelated to the operative first amended complaint:

> [D]efendant's [sic] should be required to return all monies spent from the trust fund that do not benefit the inmate population, as a whole. . . . [T]he monies spent on televisions and satellite televisions do not benefit [Wattleton] because prison officials do not allow him to select, choose or change the television channel and actively take steps to block his efforts to change channels when he request [sic] a change, when it would otherwise be afforded to sentenced inmates housed on 1-2 Unit. . . . [Wattleton] is being singled out, banned and treated differently than any other purchaser of commissary items housed on 1-1 unit on account of his status as an insnaity [sic] acquittee.

Mar. 18, 2019 Mot. to Amend at 2–3. The pleading identifies the defendant as "John Doe or Jane Doe, Trust Fund Administrator, Federal Medical Center Rochester." *Id.* at 1. These allegations fail to state a claim upon relief to be granted, and are therefore futile, such that leave to supplement will not be granted. To the extent Wattleton alleges the challenged action burdens his exercise of a fundamental right, "detainees have no constitutional right to watch television." *Smith v. Marshall*, No. 3:12-CV-122-PK, 2012 WL 7810967, at *7 (D. Or. Dec. 10, 2012) (citing *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993)), *R&R adopted*, 2013 WL 1292191 (D. Or. Mar. 28, 2013); *see also Miller v. Scaturo*, No. 8:15-cv-02707-HMH-JDA, 2016 WL 3951668, at *6 n.8 (D.S.C. June 30, 2016), *R&R adopted*, 2016 WL 3941074 (D.S.C. July 21, 2016). "It necessarily follows that inmates [or detainees] have no right to select the channel on the television." *Purifoy v. Williams*, No. 3:17-CV-03079, 2018 WL 4781264, at *13 (W.D. Ark. Oct. 3, 2018).

To the extent Wattleton attempts to bring an equal-protection claim, that too must fail. "The Equal Protection Clause of the Fourteenth Amendment provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, and it applies to the federal government through the Due Process Clause of the Fifth Amendment." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018) (citations and internal quotation marks omitted). "The Equal Protection Clause demands that similarly situated individuals be treated alike." *Id.* (citation omitted). Wattleton must show that Defendant treated him differently than similarly-situated claimants. *See Am. Family Ins. v. City of Minneapolis*, 836 F.3d 918, 921 (8th Cir. 2016). If he is not a member of a suspect class and his claim does not involve a fundamental right, then his "federal

11

equal protection claim is subject to rational basis review." *Id.* (citation and internal quotation marks omitted). "Under rational basis review, the classification must only be rationally related to a legitimate government interest." *Id.* (citations and internal quotation marks omitted).

As previously discussed, the challenged action does not impair a fundamental right. And Wattleton, probably correctly, does not assert that civil detainees are a suspect class. *See* Mar. 18, 2019 Mot. to Amend; *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41 (1985) (listing suspect classes); *Ojo v. United States*, 364 F. Supp. 3d 163 at *4 n.5 (E.D.N.Y. 2019) (stating that "pretrial detainees are not a suspect class" (citation and internal quotation marks omitted)). *See generally Serna v. Goodno*, 567 F.3d 944, 948–49 (8th Cir. 2009) (recognizing that involuntarily committed persons are "best analog[ized] . . . to pretrial detainees" (citation omitted)). Therefore, rational-basis review applies.

In his proposed second amended complaint, Wattleton does not show that he is similarly situated to the inmates housed in 1-2 Unit. For equal-protection purposes, detainees in one unit are not considered similarly situated to those housed in another unit. *Semler v. Ludeman*, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *28 (D. Minn. Jan. 8, 2010) (citations omitted). Nor does Wattleton allege sufficient facts to determine whether he is similarly situated to others housed within his own unit. Meanwhile, "[m]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Story v. Foote*, 782 F.3d 968, 971 (8th

Cir. 2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979)). Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547 (citations omitted). Therefore, any policy regarding changing television channels is merely incidental to the legitimate governmental objective of maintaining institutional security by confining involuntarily committed individuals like Wattleton. Wattleton fails to show that Defendant's actions have no rational basis, and as a result, he will not be granted leave to file a second amended complaint as the proposed claims are futile.

## ORDER

Based upon all of the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED** that:

1. Tanya Hodge is **SUBSTITUTED** as the Defendant in this action;

2. The Objections [ECF No. 32] to the Report and Recommendation are **OVERRULED**;

3. The Report and Recommendation [ECF No. 31] is **ACCEPTED** subject to the additional analysis provided herein;

4. The Motion to Dismiss [ECF No. 15] is **GRANTED**;

5. The Motion in Opposition to the Motion to Dismiss [ECF No. 24] is **DENIED**;

6. The Motions to Amend the Complaint [ECF Nos. 41, 45] are **DENIED**; and

7. The Amended Complaint [ECF No. 4] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 11, 2019          s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court